UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANTHONY V. FUSILIER,

          Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

          Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-5796 (CBA)

**AMON, United States District Judge:**

Pro se plaintiff Anthony Fusilier seeks judicial review of the Social Security Administration's ("SSA") denial of his claim for disability benefits, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (D.E. # 2.) Now before the Court is the Commissioner of the SSA's ("Commissioner") unopposed motion for judgment on the pleadings. (D.E. # 14–15 ("Br.").) For the reasons set forth below, the Court denies the Commissioner's motion and remands the case for further proceedings.

## BACKGROUND

"Because the Commissioner's motion is unopposed, the Court adopts the facts set forth in the Commissioner's moving brief as if set forth fully herein." James v. Comm'r of Soc. Sec., No. 13-CV-2492 (PKC), 2014 WL 4793451, at *1 (E.D.N.Y. Sept. 24, 2014); see also Jackson v. Fed. Exp., 766 F.3d 189, 197 (2d Cir. 2014) (finding that in cases of unopposed motions, "there is no need for a district court to robotically replicate the defendant-movant's statement of undisputed facts and references to the record"). Accordingly, the Court gives only a brief overview from the administrative record, (D.E. # 10 ("Record" or "R.")), that is currently before the Court.

1

Fusilier was incarcerated from approximately 2004 through 2011. In the time since his release, Fusilier did not work in any substantial capacity, apart from selling movies on the street a "few times." (R. at 60.) Plaintiff filed applications for disability insurance benefits and supplemental security income on July 12, 2011, alleging disability based upon physical and mental impairments. (Id. at 153–63, 189.) Fusilier's applications were denied, (id. at 77–85), and he thereafter requested a hearing before an Administrative Law Judge ("ALJ"), (id. at 86).

Fusilier appeared before the ALJ on May 3, 2013 and testified that he was seeing doctors for bipolar disorder and severe depression. (Id. at 23.) He also testified that was receiving treatment for his back condition, including taking Percocets three times per day. (Id.) Although the ALJ concluded that the record was devoid of evidence relating to Fusilier's back condition, she gathered information regarding Fusilier's doctors so that more evidence could be obtained. (Id.) The first hearing was eventually continued after the ALJ concluded that she lacked sufficient evidence regarding Fusilier's back impairment. (Id. at 27–35.)

The second hearing before the ALJ occurred on December 6, 2013. During the course of the hearing, the ALJ again concluded that there was "nothing, nothing" in the record "regarding the back." (Id. at 6.) That assessment is borne out by examining the Record before the Court: of the 1300 pages, less than ten appear to be related to Fusilier's back issues. Nevertheless, in a decision dated May 14, 2014, the ALJ found that neither Fusilier's physical nor mental impairments rendered him disabled because he was capable of performing light work. (Id. at 8–26.) The ALJ's decision became the final decision of the Commissioner when the appeals council denied Fusilier's request for review on August 20, 2015. (Id. at 1–4.) This action followed.

## STANDARD OF REVIEW

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F. 3d 150, 160 (2d Cir. 2010)).

Even where a motion stands unopposed, the Court does not embrace default judgment principles. See Vt. Teddy Bear Co. v. 1800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004) (applied in context of summary judgment). Though an unopposed motion "allow[s] the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Id. at 246 (citations and quotation marks omitted); see also Martell v. Astrue, No. 09-CV-1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (noting same standard applies in context of pro se unopposed Social Security benefits appeal). "When the plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally" and interpret them as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after Twombly . . . we remain obligated to construe a pro se complaint liberally.").

### B. Review of the ALJ Decision

Judicial review of the Commissioner's decision is limited to reviewing (1) whether the ALJ applied the correct legal standard, and (2) whether his findings of fact are supported by substantial evidence. See 42 U.S.C. § 405(g); Calabrese v. Astrue, 358 Fed. App'x 274, 275 (2d Cir. 2009) (citing Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). Under § 405(g) of the Social Security Act, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." In reviewing a final decision of the SSA, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). Substantial evidence is "'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Code of Federal Regulations for Social Security provides for a sequential five-step guide for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)–(h). At the first step, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. Id. § 404.1520(b). If not, the Commissioner must proceed to the second step to determine whether the claimant has a severe medically determinable impairment or combination of impairments. Id. § 404.1520(c). An impairment is severe if it significantly limits a claimant's abilities to perform "basic work activities." Id. § 404.1520(c). If the claimant has a medically determinable severe impairment, the Commissioner will proceed to step three to determine whether any identified severe impairments meet those identified in

Appendix 1 to the Act. Id. § 404.1520(d). Such impairments are per se disabling if a claimant meets the duration requirements of 20 C.F.R. § 404.1509. Id.

If a claimant's impairments are not per se disabling, the ALJ must assess the claimant's ability to work in light of his limitations, otherwise known as his residual functional capacity ("RFC"). Id. §§ 404.1520(e); 404.1545(a)(1). Once the claimant's RFC is decided, the Commissioner must undertake to establish whether the claimant's RFC will allow him to perform past relevant work. Id. § 404.1520(f). If the claimant's RFC precludes him from performing past relevant work, the Commissioner bears the burden of proving that—given his RFC, age, education, and work experience—the claimant can do other work that exists in significant numbers in the national economy. Id. § 404.1512(f). If such work exists, the claimant is not disabled. Id. § 404.1520(g)(1).

Here, the ALJ's opinion appropriately tracks the five-step analysis. (See R. at 12–19.) First, she found that plaintiff had not engaged in substantial gainful activity since August 13, 1998. (R. at 13.) At step two, the ALJ found that Fusilier had severe impairments of degenerative disc disease of the cervical and lumbar spines; bipolar affective disorder; most recent episode depressed; polysubstance abuse; and antisocial traits. (Id. at 13–15.) At step three, the ALJ found that none of these conditions rendered Fusilier per se disabled. (Id.) In determining Fusilier's RFC, she found that he could perform light work limited to "simple, routine, repetitive, low stress work involving few workplace changes, few decisions to be made during the course of the workday, and no requirement to interact with the general public." (Id. at 17.) At this step, the ALJ concluded that Fusilier had no limitations on standing, sitting or walking. (Id.) At step four, the ALJ found that plaintiff had no past relevant work experience. (Id. at 19.) At step five, the ALJ found that, based upon Fusilier's RFC, vocational factors, and the testimony of a vocational

expert, he could make a successful adjustment to light work that existed in significant numbers in the national economy. (Id. at 19.)

## DISCUSSION

Fusilier's complaint does not contest any specific finding or conclusion made by the ALJ along the five step process; instead it alleges generally that "[t]he decision of the [ALJ] was erroneous, not supported by substantial evidence on the record, and/or contrary to the law." (Compl. at 3.) Ultimately, the Court finds these contentions require remand for further consideration. As explained below, the ALJ erred because she did not apply the correct legal standards, primarily because, as the ALJ repeatedly noted at both hearings, the record is lacks evidence of Fusilier's physical impairments. (R. at 25, 63.) The absence of evidence regarding Fusilier's physical condition also prohibited the ALJ from making a proper assessment of his RFC. Accordingly, the Court remands this case for further proceedings.

### A. Failure to Develop the Record

The ALJ's failure to develop the record regarding Fusilier's back condition was error that requires the case to be remanded for further development. "Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative obligation to develop the administrative record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)); see also Sims v. Apfel, 530 U.S. 103, 111 (2000) (noting that the non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits"). The Commissioner's regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] make every reasonable effort

to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d).

Under the "treating-physician rule," the opinion of a claimant's treating physician "regarding the nature and severity of [the claimant's] impairments" will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Accordingly, "the duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule." Pabon v. Barnhart, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (alterations in original) (quoting Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991)). "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is 'all the more important.'" Khan v. Astrue, No. 11-CV-5118 (MKB), 2013 WL 3938242, at *16 (E.D.N.Y. July 30, 2013) (quoting Rocchio v. Astrue, No. 08-CV-3796 (FM), 2010 WL 5563842, at *11 (S.D.N.Y. Nov. 19, 2010)) (citation omitted), report and recommendation adopted, No. 08-CV-3796 (JSR), 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011); see also Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 343 (E.D.N.Y. 2010) ("[T]he opinion of a treating physician is an especially important part of the record to be developed by the ALJ."). Moreover, an ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." Khan, 2013 WL 3938242, at *16; accord Moran v. Astrue, 569 F.3d 108, 114–15 (2d Cir. 2009).

Here, the ALJ failed to develop the record by neglecting to obtain either an expert opinion or complete records from Fusilier's treating physician, Dr. Moysik, or records from Susan Nukatkor-Doh, his nurse practitioner. At the first hearing, the ALJ expressed surprise and dissatisfaction that she did not have records relating to his back condition, Dr. Moysik, or his visits to the pain management clinic. (See, e.g., R. at 50–53.) Because of these deficiencies, the ALJ adjourned the hearing due to the gaps in the record. (Id. at 55.) Despite the adjournment, it does not appear much, if any, development of the record occurred. Indeed, at the second hearing, the ALJ specifically noted that she did "not have any records from Dr. Moysil," and that "the whole record is regarding psych." (R. at 64; see also id. at 63 (ALJ: "Nothing, nothing [in the record] regarding the back.").) The ALJ further noted that she did not "have any of the records" from Fusilier's pain management clinic, (id. at 65), despite the fact that he testified that he was seeing his nurse practitioner every month for the past year and that she had proscribed him three Percocets per day for his back pain, (id. at 61–62). Given the abundance of evidence in the record regarding Fusilier's psychological impairments and near complete absence of medical records relating to his physical impairments, the ALJ directed him to "pretend that you don't have any pain or back problems . . . let's just talk about your psychiatric problems for now." (Id. at 66.)

Fusilier nevertheless eventually proceeded to describe his back condition to the ALJ and the limitations it imposed upon him. He told her that he had "[s]harp shooting pains . . . down [his] leg into [his] ankle, the pain radiated down both legs," he could only walk a block without having to stop and rest, and he "fights through the pain" by "leav[ing] early" to secure a seat on the bus or subway. (Id. at 71–72.) The Record as a whole contains only a few records from Dr. Moysik and his prescription from Ms. Nutakor-Doh from 2012. (See id. at 1297–1304.) Those records reveal that Fusilier's subjective statements were somewhat supported by physical

evidence. For example, Fusilier tested positive bilaterally under both the Spurling's Test and the Straight Leg Raising Test. (Id. at 1301.) An MRI ordered by Dr. Moysik showed straightening of the lumbar curvature with posterior midline herniation and multilevel mild lateral recess stenosis secondary to multilevel facet. (Id.) An MRI of cervical spine showed straightening of the cervical curvature, and posterior bulge. (Id. at 1300.) There is nothing further in the record regarding treatment Fusilier received for his back and there is no opinion about his physical capacity for standing, sitting, or walking.

The foregoing demonstrates that the ALJ failed to sufficiently develop the record regarding the extent and nature of Fusilier's physical conditions, and the limitations they imposed upon his ability to work. The ALJ acknowledged herself that there was "scant" evidence in the record relating to Fusilier's physical condition. (R. at 17.) Given the near absence from the file of contemporaneous medical evidence from Dr. Moysik and Ms. Nukatkor-Doh—and no opinion from Dr. Moysik—there are clearly significant gaps and deficiencies in the record. See Devora v. Barnhart, 205 F. Supp. 2d 164, 172–73 (S.D.N.Y. 2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician."); Stemmermann v. Colvin, No. 13-CV-241 (SLT), 2014 WL 4161964, at *8 (E.D.N.Y. Aug. 19, 2014) ("[T]he ALJ failed to develop the record by not obtaining an expert opinion from Plaintiff's treating physician . . . about the onset date of the limitations and the existence, nature, and severity of the alleged disability during the relevant period at issue . . . [the ALJ should] have developed the record more adequately by obtaining evidence from the Physician's Assistant, who had seen Plaintiff ten times during the alleged disability period."). Consequently, the case must be remanded for further development of the record.

Nor can the Court grant the Commissioner's motion on the basis that the ALJ adequately attempted to obtain these records because it is unclear from the record what degree of effort was made in obtaining records relating to Fusilier's back ailments. An ALJ may decline to seek additional records when she "know[s] from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 404.1512(e)(2). However, "[w]ithout some reasonable explanation for the ALJ's failure to obtain . . . records, the court [will] not [be] satisfied that the ALJ fulfilled her affirmative obligation to develop the record." Hilsdorf, 724 F. Supp. 2d at 345.

Here, as the second hearing concluded, the ALJ directed Fusilier's representative "to fax any records regarding his physical condition . . . and include in that the name of the pain management doctor." (Id. at 74.) The record indicates that, in February 2014, the Commissioner attempted to contact Urban Radiology, where Dr. Moysik works, for records relating to Fusilier's physical condition and the receptionist there said "a lot of the records were destroyed by Hurricane Sandy," and that no records were available for Fusilier. (Id. at 236.) However, as discussed above, the record contains eights pages from Urban Radiology and there is no explanation provided why only these records were provided.[1] Therefore, the fact "that [Urban Radiology], at some point, did in fact submit medical records and opinions forecloses the possibility that the ALJ failed to obtain records from the relevant period simply because he knew from experience that [Urban Radiology] would not cooperate." Hilsdorf, 724 F. Supp. 2d at 345; see also Pitcher v. Barnhart, No. 06-CV-1395 (LEK), 2009 WL 890671, at *14 (N.D.N.Y. Mar. 30, 2009) (finding that, even where the treating physician was unresponsive to earlier requests, the existence of the same physician's

---

[1] On its face, the Commissioner could not accept the Hurricane Sandy explanation as supplying a valid basis for not pursuing the missing records of Fusilier's monthly visits to the pain clinic for at least in 2013 because Hurricane Sandy occurred in October 2012.

10

treatment notes in the record suggested that the ALJ's failure to obtain relevant records could not be explained by ALJ's knowledge that the physician would not provide the necessary findings).

Moreover, despite cancelling one hearing because she realized that there was "a whole other physical aspect to this" that she lacked evidence of, (R. at 51), and then expressing the same surprise about the same lack of evidence at the second hearing when Fusilier mentioned that he takes Percocet and sees a pain management doctor once a month, (id. at 62), the ALJ's opinion offers no explanation for this lack of evidence, only concluding that it was "scant," (id. at 19). However, "[a]bsent a valid explanation as to why the ALJ failed to seek out the[se] records . . . the Court is not satisfied that the ALJ fulfilled his affirmative obligation under the Social Security regulations and Second Circuit jurisprudence." Hardhardt v. Astrue, No. 05-CV-2229 (DRH), 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008). Consequently, because the ALJ did not explain why the record was so devoid of records relating to Fusilier's physical condition, the Court cannot conclude she adequately discharged her duties to develop the record.

Lastly, although the Commissioner's motion makes no express argument that the record was complete, the Court finds the Commissioner's apparent attempt to explain the absence of evidence to be unavailing. The Commissioner asserts that Fusilier was prescribed Percocet "by a nurse practitioner who had subsequently been indicted for prescribing and providing medically unnecessary services." (Br. at 27.) The Commissioner does not assert that these charges had any connection whatsoever to Fusilier or even that his prescription was cancelled following the filing of the charges. Thus, whatever relevance this fact has, if any, it does not provide a justification or explanation for the dearth of records relating to Fusilier's back condition.

## B. The ALJ's RFC Determination

The Court also concludes that the lack of evidence regarding Fusilier's physical condition and how it impacted his physical abilities caused the ALJ's RFC determination to be deficient in several respects. As mentioned above, a claimant's RFC represents an assessment of his "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. It is the most a claimant can still do despite his or her limitations." 20 C.F.R. § 416.1545(a)(1). The Social Security regulation's requirement that the Commissioner obtain medically necessary medical records includes an obligation to obtain a proper assessment of the claimant's RFC. See 20 C.F.R. § 404.1513(b) (describing "medical reports" as including "statements about what [a claimant] can still do"). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Fontez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *19 (E.D.N.Y. Sept. 28, 2017) (citing Hilsdorf 724 F. Supp. 2d at 347); see also Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").

Here, the ALJ found that "because of the degenerative disc disorder of the spine, the claimant can lift and carry no more than 20 pounds [but] he has no limitations sitting, standing, and/or walking because the laboratory findings show no evidence of nerve involvement or compression and the clinical signs are scant." (R. at 19.) The ALJ thereafter concluded that Fusilier was capable of performing light work as defined in the Social Security regulations. (Id.) That determination, however, was in error because the ALJ applied the incorrect legal standard

because her assessment based upon any medical opinion; instead it was based upon the ALJ's own assessment of a few MRIs showing "no nerve involvement or compression" in Fusilier's back. (Id. at 19.)[2] Furthermore, the ALJ made this determination in spite of her classification of Fusilier's back condition as a "severe" impairment. (Id. at 13-15.) Because the ALJ failed to obtain an adequate medical assessment of Fusilier's functional abilities and instead based upon her own lay opinion of the evidence she herself determined was "scant," the ALJ committed legal error.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is denied and the matter is remanded under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

Dated: March 2, 2018
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

---

[2] The ALJ based her finding that Fusilier was not per se disabled on the same facts—that there "was no nerve involvement or compression." (R. at 15.) For purposes of further consideration upon remand, it bears mentioning that the ALJ should distinguish between facts that would cause Fusilier to be per se disabled under the Social Security regulations and those that impact the RFC analysis.

13